IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VTT TECHNICAL RESEARCH CENTRE OF FINLAND LTD., | § § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No. 25-348 |
| TELEDYNE FLIR, LLC, and TELEDYNE TECHNOLOGIES INCORPORATED, | § § § § | |
| *Defendants.* | § § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff VTT Technical Research Centre of Finland LTD. ("VTT") filed this patent infringement lawsuit alleging that defendants Teledyne FLIR, LLC, and Teledyne Technologies Incorporated (collectively, "Teledyne") have infringed VTT's United States Patent No. 8,063,369 ("the '369 patent"). Dkt. No. 1. Following a first motion to dismiss the complaint, Dkt. No. 15, VTT filed an amended complaint, Dkt. No. 19. Teledyne then filed a second motion to dismiss, Dkt. No. 20, which was denied, Dkt. No. 29. Following the denial of that motion, Teledyne filed its answer to the amended complaint, which included a counterclaim and an affirmative defense of inequitable conduct. Dkt. No. 30. VTT has now moved to dismiss Teledyne's inequitable conduct counterclaim and the corresponding affirmative defense. Dkt. No. 35. Teledyne has filed a response, Dkt. No. 45, and VTT has filed a reply, Dkt. No. 49. For the reasons set forth below, VTT's motion is granted.

**I.      Background**

The '369 patent is directed to circuit architecture designed to improve the accuracy of thermal imaging systems. According to VTT's complaint, Teledyne develops and sells infrared

1

imaging products that rely on microbolometer technology. Dkt. No. 19 at ¶ 7. Those products include Teledyne's Boson and Boson+ thermal camera modules. *Id.* at ¶ 42. VTT identifies the Boson and Boson+ as accused products, but it alleges that other currently unknown Teledyne products may infringe the '369 patent as well. *Id.*

In its answer, Teledyne pleaded as one of its affirmative defenses and counterclaims that the '369 patent should be held unenforceable because of inequitable conduct by "one or more of the '369 Patent Inventors and prosecutors." Dkt. No. 30 at 11, 16–18. Teledyne asserted that VTT had acknowledged that the alleged innovation "at the heart of" the '369 patent is "an infrared camera, sensor, or imaging system incorporating a bolometer array wherein the first bolometer is biased using a second bolometer to amplify detected radiation signals." *Id.* at 16. Teledyne alleged that "infrared cameras, sensors, and imaging systems that use a second bolometer to bias a first bolometer were well known in the industry before at least the 2000s." *Id.* In particular, Teledyne alleged that U.S. Patent No. 5,756,999 ("the '999 patent"), titled "Methods and Circuitry for Correcting Temperature-Induced Errors in Microbolometer Focal Plane Array," disclosed an amplifier circuit using a second bolometer to bias a first bolometer. *Id.* at 16–17. In addition, Teledyne alleged on information and belief that before the critical date of the 369 patent, "commercial infrared cameras, sensors, and imaging systems . . . including at least those produced by Indigo Systems Corp. also included amplifier circuits wherein a first bolometer was biased using a second bolometer." *Id.* at 17.

Teledyne further alleged, again on information and belief, that "one or more of the '369 Patent Inventors and prosecutors . . . deliberately withheld from the [Patent and Trademark Office ("PTO")] material information regarding the prior art, including the existence of, properties of, and details regarding publications and prior art systems using a second bolometer to bias a first

bolometer that were well-known before the critical dates of the '369 Patent." *Id.* at 17–18. Teledyne also alleged, as "affirmative egregious misconduct," that the inventors and prosecuting attorneys of the '369 patent had improperly characterized the prior art products as "inventive examples," i.e., they falsely asserted that the prior art products were embodiments of the claimed invention, providing what Teledyne characterized as "a separate basis for a finding of materiality." *Id.* at 18. Teledyne summarized its inequitable conduct allegations by stating, again on information and belief, that the inventors and patent prosecutors had "deliberately withheld said material information with the specific intent to deceive the examiner and the [PTO] to secure allowance of the claims of the '369 Patent." Dkt. No. 30 at ¶ 19–28.

**II.   Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint or counterclaim should be dismissed if it "fail[s] to state a claim upon which relief can be granted." The same standard applies in ruling on a motion to dismiss a counterclaim. *See Identix Pharms., Inc. v. Gilead Scis., Inc.*, No. 13-1987, 2014 WL 4222902, at *5 (D. Del. Aug. 25, 2014).

The Third Circuit has instructed district courts to conduct a "two-part analysis" in evaluating a motion to dismiss for failure to state a claim or counterclaim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the district court must separate the factual and legal elements of the claims. *Id*. In so doing, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id*. at 210–11. Second, the court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id*. at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

When, as in this case, a defendant pleads both a counterclaim and an affirmative defense raising the same issue, the analysis applicable to the counterclaim is equally applicable to the affirmative defense. *See Applied Biokinetics LLC v. KT Health, LLC*, No. 22-638, 2023 WL 5651843, at *3 (D. Del. Aug. 31, 2023); *LEO Pharma A/S v. Actavis Lab'ys UT, Inc.*, No. 16-333, 2018 WL 1045816, at *3 (D. Del. Feb. 26, 2018) ("Just as a claim for inequitable conduct must meet the heightened pleading requirements of Rule 9(b), a defendant is also 'required to plead this affirmative defense with particularity under Rule 9(b)'") (quoting *Bayer CropScience AG v. Dow AgroSciences LLC,* No. 10-1045, 2011 WL 6934557, at *3 (D. Del. Dec. 30, 2011)); *Saint Jude Med., Cardiology Div., Inc. v. Volcano Corp.*, No. 12-441, 2014 WL 2622240, at *1 n.2 (D. Del. June 11, 2014); *Senju Pharm. Co. v. Apotex, Inc.*, 921 F. Supp. 2d 297, 306 (D. Del. 2013) ("[A] counterclaim and affirmative defense for inequitable conduct rise or fall together.").[1]

The substantive elements of inequitable conduct are: "(1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 n.3 (Fed. Cir. 2009). Inequitable conduct, while a broader concept than fraud, must be pleaded "with particularity" under Rule 9(b) of the Federal Rules of Civil

---

[1] Courts in this district have noted that Rule 12(b)(6) does not apply to affirmative defenses, but have held that dismissal of an affirmative defense is authorized by Rule 12(f). *See, e.g., Jackson v. SeaSpine Holdings Corp.*, No. 20-1784, 2023 WL 5175387, at *3 (D. Del. Aug. 11, 2023); *Wyeth Holdings Corp. v. Sandoz, Inc.*, No. 09-955, 2012 WL 600715, at *4 (D. Del. Feb. 3, 2012); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l Inc.*, No. 08-309, 2009 WL 4928024, at *8–10 (D. Del. Dec. 18, 2009). While Rule 12(f) is mainly directed to a court's power to strike "redundant, immaterial, impertinent, or scandalous matter" from a pleading or defense, a pleading or defense, it also authorizes a court to "strike from a pleading an insufficient defense" and thus permits dismissal of matter that fails to plead the elements of a viable defense.

Procedure. *Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003). "Whether inequitable conduct has been pleaded with particularity under Rule 9(b) is a question governed by Federal Circuit law." *Exergen,* 575 F.3d at 1318.

### III.  Discussion

VTT argues that Teledyne's allegations of inequitable conduct do not satisfy the requirements of Rule 9(b) of the Rules of Civil Procedure and thus should be dismissed. Dkt. No. 36 at 4–10. Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." As applied to claims of inequitable conduct, the Federal Circuit has held that Rule 9(b) requires that a pleading

> must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO. Moreover, although "knowledge" and "intent" may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO.

*Exergen*, 575 F.3d at 1328–29.

VTT argues that Teledyne's allegations (1) fail to identify any particular individual who allegedly committed acts constituting inequitable conduct; (2) fail to identify what specific prior art references were allegedly withheld or how that information is material to patentability; (3) do not allege what "inventive examples" or "prior art products" VTT supposedly misrepresented; and (4) do not plausibly allege that any particular individual acted with the intent to deceive. Dkt. No. 36 at 2.

In response, Teledyne argues that it has sufficiently pleaded each requirement set forth in Rule 9(b) to overcome VTT's motion to dismiss the inequitable conduct counterclaim and defense.

5

Dkt. No. 45.  Teledyne argues (1) that it has specified "readily identifiable" individuals who engaged in inequitable conduct; (2) that it has identified prior art references that teach claim limitations and how that art is material and non-cumulative; and (3) that it has alleged "[c]ircumstantial facts that give rise to a reasonable inference of scienter."  Dkt. No. 45 at 1-2.

For the reasons set forth below, I conclude that Teledyne's allegations of inequitable conduct fall short of what is required to satisfy the standard set forth by the Federal Circuit in *Exergen* and other similar cases.

**1.**  To begin with, a claim of inequitable conduct based on a failure to disclose will survive a motion to dismiss only if the pleadings in support of the claim recite facts "from which the court may reasonably infer that a specific individual both knew of invalidating information that was withheld from the PTO and withheld that information with a specific intent to deceive the PTO." *Delano Farms Co. v. Cal. Table Grape Comm'n*, 655 F.3d 1337, 1350 (Fed. Cir. 2011).  Teledyne's allegations fall short of satisfying that standard, both because Teledyne fails to name specific individuals who allegedly withheld material information and because it fails to allege facts from which it could reasonably be inferred that any of those individuals was aware of the withheld information.

Teledyne argues that it has properly specified "readily ascertainable" individuals who allegedly engaged in inequitable conduct because the three inventors are named on the face of the patent and the six prosecuting attorneys are identified in the publicly available patent file history. Dkt. No. 45 at 5-6.  Teledyne argues that its allegations that "one or more" of those nine individuals engaged in inequitable conduct is sufficient to meet its pleading burden.  Dkt. No. 45 at 5-6.

Teledyne points to case law from the District of Delaware to support its contention that making allegations against a group of inventors or prosecutors is sufficient to satisfy its pleading

6

burden. Dkt. No. 45 at 6. In fact, however, the case law that Teledyne cites does not support its position. The first case Teledyne cites, *Telebrands Corp. v. 1byOne Products, Inc.*, No. 17-997, 2018 WL 3696558 (D. Del. Aug. 3, 2018), stands for the opposite proposition; it holds that a "generic reference to the 'named inventors' is insufficient to satisfy the 'who' component of the pleading standard." *Id.* at *2. While the second case that Teledyne cites, *International Business Machines Corp. v. Priceline Group Inc.*, No. 15-137, 2017 WL 1349175 (D. Del. Apr. 10, 2017), states that "Defendants' claims against the 'named inventors' and the 'prosecuting attorneys' *could* be specific enough to meet the 'who' requirement, to the extent that they could be understood to accuse each of the members of a known, clearly ascertainable group" (emphasis in original), the court in that case did not resolve the question whether those allegations were sufficient. Instead, the court dismissed the majority of the inequitable conduct allegations on the ground that there were "not sufficient facts pleaded to establish, *inter alia*, that the 'named inventors' or 'prosecuting attorneys' [other than one who was named specifically] actually had knowledge of the activities that they allegedly failed to disclose." *Id.* at *9.[2]

Teledyne's allegations fail for the same reasons. While it is possible to identify the members of the group Teledyne points to, Teledyne's allegations fall short of naming the specific individual or individuals "associated with the filing or prosecution of the application . . . who both knew of the material information and deliberately withheld or misrepresented it." *Exergen*, 575 F.3d at 1329; *see Senju Pharm. Co.*, 921 F. Supp. 2d at 307 ("Apotex's vague allegations could

---

[2] In *Diebold Nixdorf, Inc. v. Hyosung Tris, Inc.*, No. 19-1695, 2021 WL 861734, at *3 (D. Del. Mar. 4, 2021), the court held that an allegation that the "named inventors" engaged in inequitable conduct was sufficient because the defendants' counterclaim alleged that "each one of the group of individuals engaged in inequitable conduct," thus satisfying the requirement set forth in the *Priceline* case.

implicate all or none of the individuals who had dealings with the PTO during the reexamination.").

In other cases from this district, courts have similarly concluded that allegations of misconduct by collective groups is generally insufficient to satisfy the requirement of pleading the "who" element if inequitable conduct set forth in the Federal Circuit's *Exergen* decision. In *Institute for Environmental Health, Inc. v. National Beef Packing Co.*, No, 23-826, 2024 WL 5117412, at *7 (D. Del. Dec. 16, 2024), the court held that an allegation that the plaintiff's attorneys failed to disclose material information was insufficient. In *Baxalta Inc. v. Bayer Healthcare LLC*, No. 17-1316, 2020 WL 5445375, at *4–5 (D. Del. July 13, 2020), the court ruled that the defendant's allusion to "the Applicants" as a group lacked the specificity required to state a claim for inequitable conduct even though the pleading identified the applicants by name. In *LEO Pharma A/S,* 2018 WL 1045816, at *4, the court found insufficient allegations of inequitable conduct by the named inventors, the attorneys or agents who prepared or prosecuted the patents, and/or employees of the company who were substantively involved in the preparation or prosecution of the patents at issue. And in *Alza Corp. v. Par Pharm., Inc.*, No 13-1104, 2014 WL 12908353, at *1 (D. Del. May 27, 2014), the court held that the counterclaimant's reference to "the Applicants," i.e., the inventors or their "agents or attorneys or other persons involved in the prosecution of the applications" was not specific enough to satisfy the "who" pleading requirement of *Exergen*. The court in the *Alza* case explained the rationale of that line of cases, noting that even in cases in which an inequitable conduct allegation is made against a collective group such as the "applicants," the allegations are insufficient unless they "sort[] them out in relation to particular acts of particular individuals." *Id.*

I therefore find that Teledyne has insufficiently pleaded the element of *Exergen* requiring identification of the "who" that is accused of deceiving the PTO.

**2.** Teledyne's allegations regarding the failure of VTT's representatives to disclose material prior art references falls short of what is required to allege inequitable conduct. The only prior art reference that Teledyne specifically identifies as withheld is the '999 patent. Dkt. No. 30 at 22. Beyond that, Teledyne makes only a general assertion "[o]n information and belief," that "commercial infrared cameras, sensors, and imaging systems before the critical date of the '369 Patent including at least those products produced by Indigo Systems Corp. also included amplifier circuits wherein a first bolometer was biased using a second bolometer." Dkt. No. 30 at 17.

Teledyne does not specifically allege that any of the inventors or prosecutors were aware of the existence or the content of the '999 patent. Instead, Teledyne makes only a general statement that the inventors or prosecutors "deliberately withheld from the USPTO material information regarding the prior art," without asserting that any of those individuals was aware of any particular prior art reference, such as the '999 patent, that would have been material to the patentability of the '369 patent.[3] Dkt. No. 30 at § 23.

An allegation that "provides no factual basis to infer that any specific individual, who owed a duty of disclosure in prosecuting the [asserted patent], knew of the specific information in the [prior art] that is alleged to be material to the claims" is the type of inequitable conduct allegation that courts have found to be insufficient. *Exergen*, 575 F.3d at 1330; *Central Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347, 1356-57 (Fed. Cir. 2007) (dismissing

---

[3] Teledyne argues that VTT "offers no legal authority on why Teledyne cannot assert the '999 Patent as an example of how elements of the asserted claims were "well known in the industry." Dkt. No. 45 at 8. While the '999 patent may be material, Teledyne has failed to plead that the inventors or prosecuting attorneys had knowledge of that patent.

9

inequitable conduct allegations for failure to "identify what relevant and undisclosed prior art was known to the patentee" or how the alleged inequitable conduct "was meant to mislead the PTO"); *Priceline*, 2017 WL 1349175 at *9 ("what is required here is more than just a vague statement of what Defendants know 'on information and belief.' Instead, actual facts have to be pleaded that would allow the inference that each of the named inventors . . . or prosecuting attorneys . . . had knowledge of the relevant [allegedly withheld prior art]").

      **3.** Relatedly, Teledyne's assertion of inequitable conduct also fails because Teledyne has not sufficiently pleaded facts showing that any of the inventors or prosecutors had the "specific intent to deceive the PTO" required to support an inequitable conduct finding. *Exergen*, 575 F.3d at 1327 n.3 (citing *Star Scientific*, 537 F.3d at 1365). Teledyne argues that its deceptive intent pleading on "information and belief" is sufficient at this stage of the case, given that evidence of knowledge and intent are uniquely within VTT's control. Dkt. No. 45 at 2. However, such a pleading is sufficient under Rule 9(b) "only if the pleading sets forth the specific facts upon which the belief is reasonably based." *Exergen*, 575 F.3d at 1330. Teledyne has set forth no specific facts upon which it bases its belief as to any individual's specific intent to deceive the PTO. Instead, Teledyne simply argues that its assertion that the "pleaded prior art was well-known and commercially available before the critical date" is sufficient to satisfy that pleading requirement, Dkt. No. 45 at 2, which it plainly is not.

      Nor does Teledyne's contention that the '999 patent and other prior art was material to patentability suffice to fill the gap with regard to the element of specific intent. "[M]ateriality does not presume intent, which is a separate and essential component of inequitable conduct." *Star Scientific*, 537 F.3d 1357, 1366 (quoting *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1274 (Fed. Cir. 2001)); *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1291 (Fed. Cir. 2011)

10

(noting that "[i]ntent and materiality are separate requirements" and that "[a] district court should not use a 'sliding scale,' where a weak showing of intent may be found sufficient based on a strong showing of materiality, and vice versa"). "In a case involving nondisclosure of information, clear and convincing evidence must show that the applicant made a deliberate decision to withhold a known material reference." *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1181 (Fed. Cir. 1995); *Hebert v. Lisle Corp.,* 99 F.3d 1109, 1116 (Fed. Cir. 1996) ("Intent to deceive can not be inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent."). "'Inequitable conduct' is not, or should not be, a magic incantation to be asserted against every patentee. Nor is that allegation established upon a mere showing that art or information having some degree of materiality was not disclosed. To be guilty of inequitable conduct, one must have intended to act inequitably." *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1415 (Fed. Cir. 1987).

As discussed above, Teledyne has failed to allege that any of the inventors or prosecuting attorneys actually knew of any specific withheld prior art. Even if Teledyne's allegations could be deemed to constitute such an allegation, Teledyne has asserted no facts to support its argument as to the inventors' or attorneys' specific intent to deceive. Teledyne's case, in essence, is that VTT's representatives were familiar with the field and therefore must have had general knowledge of the prior art references such as the '999 patent and the products using a second bolometer to bias a first bolometer. Armed with that knowledge, according to Teledyne's theory, VTT's inventors and prosecuting attorneys must have been motivated to keep that damaging information from the examiner.

That chain of adverse inferences falls short of what is required to support a deceptive intent allegation, even at the pleading stage. Although Teledyne alleges that one or more of the inventors

11

and prosecutors "deliberately withheld" material information from the PTO, it sets forth no particularized factual bases for that allegation, but instead "simply avers the substantive elements of inequitable conduct," which is insufficient to satisfy Rule 9(b). *Exergen*, 575 F.3d at 1326–27.

While circumstantial evidence may be used to prove that an inventor or prosecutor engaged in inequitable conduct by withholding material prior art from the PTO, such a showing requires alleging, and ultimately proving, underlying facts beyond simple nondisclosure. For example, the Federal Circuit has affirmed an inequitable conduct finding in which an experienced patent practitioner cited a piece of prior art multiple times in foreign patent applications and represented it as being "the closest prior art," but did not cite that reference, or any other reference, at any point during thirteen years of patent prosecution of a similar application before the USPTO. *Molins PLC v. Textron, Inc.*, 48 F.3d 1172 (Fed. Cir. 1995). Teledyne has made no similar allegations here, or nor has it made any allegations other than general knowledge of the prior art to support its allegations of specific intent.

Because Teledyne's allegations are inadequate to plead the elements of inequitable conduct, as discussed above, it is not necessary to address VTT's arguments relating to other requirements for pleading inequitable conduct.

### IV. Motion to Amend

In its opposition to VTT's motion to dismiss Teledyne's inequitable conduct claim, Teledyne requests that the court grant leave for it to amend its answer and counterclaim. There is no need to rule on that request at this time, other than to say that Teledyne will have an opportunity to amend its pleadings in accordance with the scheduling order, *see* Dkt. No. 29 at ¶ 5 (motions to amend pleadings "shall be filed on or before April 1, 2026"), and could seek leave to amend its answer and counterclaim at that point if it develops evidence justifying such an amendment. *See*

Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486–87 (3d Cir. 1990). Even after the date in the scheduling order for amending the pleadings, either party will have the opportunity to amend its pleadings upon a showing of good cause. *See* Fed. R. Civ. P. 16(b)(4); *High Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d 1301, 1319 (Fed. Cir. 2013); *E. Mins. & Chems. Co. v. Mahan*, 225 F.3d 339, 340 n.18 (3d Cir. 2000); *Paoli v. Stetser*, No 12-66, 2013 WL 2154393, at *2 (D. Del. May 16, 2013); *WebXchange Inc. v. Dell Inc.*, No. 08-132, 2010 WL 256547, at *2 (D. Del. Jan. 20, 2010).

The rationale for postponing an inequitable conduct claim was explained in *Lipocine, Inc. v. Clarus Therapeutics, Inc.*, No. 19-622, 2020 WL 4794576, at *3 (D. Del. Aug. 18, 2020), in reasoning that may well apply to this case:

> Because it is often the case that the critical evidence necessary to prove inequitable conduct can be obtained only from the patentee, it is common for claims of inequitable conduct to arise only after discovery has been conducted. In many instances, as in this case, fact discovery is not completed until after the deadline for amending pleadings. For that reason, and given the high pleading and evidentiary hurdles facing a party who wishes to assert inequitable conduct, the party often finds itself seeking leave to add a claim of inequitable conduct after the date for amending pleadings has passed, and frequently after the close of discovery.
> In light of the high standards of pleading and proof for inequitable conduct claims, courts in this district have regularly held that it is not unreasonable for patent challengers to postpone raising allegations of inequitable conduct until sufficient discovery has been conducted to enable the challenger [to] confirm its suspicions and gather the evidence necessary to sustain its claim.

For that reason, this order dismissing Teledyne's counterclaim and affirmative defense will not prohibit Teledyne from asserting its inequitable conduct claim at a later date, if and when Teledyne is able to develop more robust evidentiary allegations in support of its inequitable conduct claim than it has put forward in the currently pending version of its answer and counterclaims.

## V. Conclusion

For the reasons set forth above, VTT's motion is granted. Teledyne's counterclaim and defense alleging inequitable conduct are dismissed.

IT IS SO ORDERED

SIGNED this 18th day of December, 2025.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE